UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ROBERTO SUAREZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | SA-24-CV-547-OLG (HJB) |
| | § | |
| STEP TRUCKING, INC. and SAEED-AL- | § | |
| GAHMI SAEED AHMED, | § | |
| | § | |
| Defendants. | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Orlando L. Garcia:**

This Report and Recommendation concerns Defendants' Motion for [Partial] Summary Judgment. (Docket Entry 24.) Pretrial matters have been referred to the undersigned. (Docket Entry 28.) For the reasons set out below, I recommend that Defendants' motion (Docket Entry 24) be **DENIED IN PART** and **DENIED AS MOOT IN PART**.

**I.    Jurisdiction.**

This is a personal injury suit filed by a Texas citizen against two citizens of Illinois and Michigan, respectively. (Docket Entry 1, at 1–3.) Plaintiff seeks damages "greatly in excess" of $75,000, including exemplary damages. (*Id.* at 8.) The Court therefore has original jurisdiction pursuant to 28 U.S.C. § 1332. The undersigned is authorized to issue this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**II.    Background.**

On March 7, 2023, Plaintiff and Defendant Saeed-Al-Gahmi Saeed Ahmed were involved motor accident on Interstate 57. (Docket Entry 1, at 3; Docket Entry 24, at 1.) Ahmed was driving

a tractor-trailer entrusted to him by his employer, Defendant Step Trucking, Inc. ("Step Trucking"). (Docket Entry 1, at 3; Docket Entry 24, at 4.)

Plaintiff filed suit on May 23, 2024. (Docket Entry 1.) As to Ahmed, Plaintiff asserts claims of negligence and gross negligence. (*Id.* at 4–8.) As to Step Trucking, Plaintiff asserts that it is vicariously liable for Ahmed's negligence—under the theory of *respondeat superior*—and that it is also directly liable based on claims of negligent and grossly negligent hiring, training, supervision, retention, and entrustment. (*Id.*) Defendants now seek partial summary judgment as to the negligent entrustment and gross negligence claims. (Docket Entry 24 at 1–2.) Plaintiff has filed a response in which he purports to "withdraw[] [his] claims for negligent entrustment and gross negligence as to Step Trucking." (Docket Entry 30, at 1.)[1] Accordingly, the only claim the undersigned considers below is Plaintiff's gross negligence claim against Ahmed.[2]

---

[1] The undersigned construes Plaintiff's purported withdrawal of these claims as request for voluntary dismissal, pursuant to Federal Rule of Civil Procedure 41(a)(2). Defendants did not respond to Plaintiff's response; accordingly, it appears that Defendants do not object to the Court's dismissal of those claims as requested. The undersigned will therefore recommend that those claims be dismissed and that Defendants' motion as to the same be denied in part as moot. *See* Fed. R. Civ. P. 41(a)(2).

[2] The undersigned notes that Defendants did not seek summary judgment on Plaintiff's other claims against Step Trucking: vicarious liability for Ahmed's ordinary negligence, and direct liability for negligently hiring, training, supervising, and retaining Ahmed. As Plaintiff has abandoned any gross negligence claim against Step Trucking, these remaining claims of vicarious and direct liability are "mutually exclusive modes of recovery." *Salas v. United States*, 667 F. Supp. 3d 380, 388 (W.D. Tex. 2023*)* (quoting *Kuss v. Ulmer*, No. SA-19-cv-629-JKP, 2021 WL 1433062, at *5 (W.D. Tex. Mar. 17, 2021); *see Raines v. GT Express, Inc.*, No. SA-21-CV-904-FB (HJB), 2024 WL 233494, at *3 (W.D. Tex. Jan. 2, 2024) ("Because vicarious liability and ordinary negligence are mutually exclusive theories of recovery against an employer, [Plaintiff] is precluded from recovering from [employer] for . . . negligent hiring, retention, training, supervision, and entrustment unless they rise to the level of gross negligence."), *report and recommendation adopted*, No. SA-21-CA-904-FB, 2024 WL 233242 (W.D. Tex. Jan. 22, 2024). While Step Trucking has not stipulated to vicarious liability, it may still elect to do so if it wishes to avoid defending this suit on two fronts.

III.    **Summary Judgment Standard.**

The purpose of summary judgment is "to isolate and dispose of factually unsupported claims or defenses." *Hayes v. Locke Supply Co.*, 724 F. Supp. 3d 609, 612 (E.D. Tex. 2024) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)). Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Allen v. U.S. Postal Serv.*, 63 F.4th 292, 300 (5th Cir. 2023) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A disputed fact is material when it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 447 U.S. at 248).

The moving party "always bears the initial burden of informing the . . . court of the basis for its motion and identifying the record evidence which it believes demonstrates the absence of a genuine issue of material fact." *Martin v. Petty*, 699 F. Supp. 3d 547, 555 (S.D. Tex. 2023) (Rosenthal, J.) (quoting *Celotex*, 477 U.S. at 323 (internal quotation marks and brackets omitted)). "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 512 (5th Cir. 2014) (quoting *Kee v. City of Rowlett, Tex.*, 247 F.3d 206, 210 (5th Cir. 2001)). When the nonmovant bears the burden of proof at trial, the moving party "may merely point to the absence of evidence and thereby shift to the nonmovant the burden of demonstrating by competent summary judgment proof that there is a dispute of material fact warranting trial." *Martin*, 699 F. Supp. 3d at 555 (quoting *MDK S.R.L. v. Proplant Inc.*, 25 F.4th 360, 368 (5th Cir. 2022)) (internal quotation marks and brackets omitted).

If the movant meets its burden, "the nonmovant must come forward with specific facts showing a genuine factual issue for trial." *Martin*, 699 F. Supp. 3d at 555 (quoting *Houston v. Tex. Dep't of Agric.*, 17 F.4th 576, 581 (5th Cir. 2021)) (internal quotation marks and brackets omitted). The nonmovant "must identify specific evidence in the record and articulate the precise manner in which the evidence aids their case." *Martin*, 699 F. Supp. 3d at 555 (quoting *Shah v. VHS San Antonio Partners, L.L.C.*, 985 F.3d 450, 453 (5th Cir. 2021)) (internal quotation marks and brackets omitted). The nonmovant "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Martin*, 699 F. Supp. 3d at 555 (quoting *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 368 (5th Cir. 2021)) (internal quotation marks omitted).

When considering a motion for summary judgment, the Court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Instead, "facts that are subject to genuine dispute are viewed in the light most favorable to [the nonmovant]," *Guillot on behalf of T.A.G. v. Russell*, 59 F.4th 743, 749–50 (5th Cir. 2023), and the Court "construe[s] all reasonable inferences in [the nonmovant's] favor," *Guzman v. Allstate Assur. Co.*, 18 F.4th 157, 160 (5th Cir. 2021). The Court will also "resolve factual controversies in favor of the nonmoving party," though such controversies exist only "when both parties have submitted evidence of contradictory facts." *Guillot*, 59 F.4th at 750 (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)). The Court need only consider the parties' cited materials. FED. R. CIV. P. 56(c)(3); *see Am. Fam. Life Assur. Co. of Columbus v. Biles*, 714 F.3d 887, 896 (5th Cir. 2013) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence.") (citation omitted).

## IV.    Discussion.

Gross negligence has both an objective and a subjective component.  *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 137 (Tex. 2012).  To prevail on a gross negligence claim, a plaintiff must prove both (1) that the defendant's act or omission, when viewed objectively, involved "an extreme degree of risk considering the probability and magnitude of the potential harm to others" and (2) that the defendant had "actual, subjective awareness of the risk involved, but nevertheless proceed[ed] with conscious indifference to the rights, safety, or welfare of others." *Id.* (citing TEX. CIV. PRAC. & REM. CODE ANN. § 41.001(11)).  Because "[g]ross negligence must be prove[d] by 'clear and convincing evidence' at trial" *Columbia Med. Ctr. Of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 248 (Tex. 2008), the question at the summary judgment stage is whether the plaintiff "has evidence that would allow a reasonable juror to find, by clear and convincing evidence, gross negligence." *Hanan v. Crete Carrier Corp.*, No. 3:19-CV-149-B, 2020 WL 42269, at *6 (N.D. Tex. Jan. 3, 2020) (citation omitted).

An "extreme risk" sufficient to satisfy the objective prong "is not a remote possibility or even a high probability of a minor harm, but rather [a] likelihood of the plaintiff's serious injury." *Waldrip*, 380 S.W.3d at 137 (citations omitted).  While "no exact line[s]" can be drawn, the situation must be "highly dangerous" to constitute gross negligence. *Phillips v. Super Servs. Holdings, LLC*, 189 F. Supp. 3d 640, 655 (S.D. Tex. 2016) (collecting cases).  "The subjective prong, in turn, requires that the defendant knew about the risk, but . . . demonstrated indifference to the consequences of his acts." *Phillips*, 189 F. Supp. 3d at 655 (citations omitted).  Conduct "that is merely thoughtless, careless, or not inordinately risky cannot be grossly negligent." *Id.* at 654.  Nor can defendants be grossly negligent if they "actually and subjectively believe[] that circumstances pose no risk to the injured party, even if they are wrong." *Waldrip*, 380 S.W.3d at

141 (citation omitted).  A defendant's subjective mental state can be proved by circumstantial as well as direct evidence.  *See Lee Lewis Construction, Inc. v. Harrison*, 70 S.W.3d 778, 785 (Tex. 2001).

"Texas courts have repeatedly made clear that whether a driver is operating a car or truck, acts that support a finding of ordinary negligence, such as a party's failure to obey traffic laws, will not support a finding of gross negligence." *Phillips*, 189 F. Supp. 3d at 656 (collecting cases). Rather, "a driver's actions must be considerably more extreme, often involving multiple conscious acts or omissions, to support liability." *Id.* (citation omitted); *see, e.g.*, *Raines*, 2024 WL 233494, at *9 (summary judgment inappropriate on gross negligence claim where tractor-trailer driver sped through rainstorm with large dog in cabin while making phone calls and accelerated into bend in road).

In this case, the only evidence in the record as to Ahmed's gross negligence is his own deposition (Docket Entry 30, at 9–31), and footage of the crash from Ahmed's dashboard camera (Docket Entry 24, at 16).[3]

In his deposition, Ahmed stated that he was driving one of Step Trucking's tractor-trailers, "hauling some merchandise," when the accident occurred.  (Docket Entry 30, at 14.)  This was a familiar stretch of road for Ahmed; he knew from prior experience that his left lane would end as he approached an upcoming Border Patrol Checkpoint, requiring him to merge into the right lane of travel.  (*Id.* at 20.)  Ahmed testified that he saw and drove past five road signs leading up to the crash, which successively warned, "Inspection Station 1 Mile," "Be Prepared to Stop," "Inspection Station ½ Mile," "45 Miles Per Hour When Flashing," and "Left Lane Ends," respectively.  (*Id.* at

---

[3] The remainder of the evidence produced pertains only to Plaintiff's claims of negligent entrustment and gross negligence against Step Trucking. (*See* Docket Entry 24, at 11–15; 17–19.) As noted above, these claims no longer need be considered by the Court.

17–19.)  The crash occurred at night, and the 45-mile-per-hour sign was flashing when Ahmed drove past it.  (*Id.* at 18–19.)  Despite the 45-mile-per-hour speed limit, Ahmed *accelerated* to 55 miles per hour.  (*Id.* at 27.)  He testified that he did so to overtake Plaintiff, who was travelling alongside him in the right lane—the only other lane of travel.  (*Id.* at 29.)  Ahmed also testified that he began his attempt to overtake Plaintiff after he saw the final sign, warning that the left lane was ending and that traffic must merge into the right lane of travel.  (*Id.*)  Finally, Ahmed testified that he was aware of Plaintiff's presence in the right lane—via a blind-spot mirror on his big rig— for 12 seconds before he merged into he right lane and crashed into Plaintiff's vehicle.  (*Id.* at 22– 24.)  The video footage from Ahmed's dashboard camera substantially corroborates Ahmed's testimony.  (*See* Docket Entry 24, at 16.)

Following the collision, the police issued Ahmed a citation "for changing lanes while unsafe."  (Docket Entry 30, at 17.)  An unsafe lane change "is regarded as 'serious,' and is a grounds for disqualifying a person from driving a [Commercial Motor Vehicle] in the American Association of Motor Vehicle Administrators Code Dictionary ('ACD')."  *Raines*, 2024 WL 233494, at *6 (citing 49 C.F.R. §§ 383.51(a)(2), (c)(3) (2021); ACD, App'x E, at 75); *see Phillips*, 189 F. Supp. 3d at 646 (taking judicial notice of ACD, noting that "Universal codes fall within the ambit of Rule 201 [of the Federal Rules of Evidence]").

The evidence, viewed in Plaintiff's favor, shows that when the crash occurred Ahmed was driving 10 miles-per-hour over the speed limit in a loaded tractor-trailer and attempting to overtake Plaintiff before his lane ended, and that in the process he committed a traffic offense so severe as to disqualify him from driving a commercial motor vehicle.  From this record evidence, a reasonable jury could "find, by clear and convincing evidence, gross negligence" on Ahmed's part. *See Hanan*, 2020 WL 42269, at *6.  Specifically, a reasonably jury could find that, viewed

objectively, Ahmed's conduct  was "highly dangerous," *Phillips*, 189 F. Supp. 3d at 655, and created "[a] likelihood of the [P]laintiff's serious injury," *Waldrip*, 380 S.W.3d at 137.  And the record evidence demonstrates that Ahmed "knew about the risk," *Phillips*, 189 F. Supp. 3d at 655— his familiarity with the route, his awareness of several signs beginning a mile out from the crash site, and his awareness of Plaintiff's presence in the right lane through his blind-spot mirror for a full 12 seconds leading up to the crash—"but nevertheless proceed[ed] with conscious indifference to the . .  safety . . . of [Plaintiff]," *Waldrip*, 380 S.W.3d at 137.

Despite the evidence discussed above, Defendants argue that the outcome here is controlled by an analogous Texas Supreme Court case: *Medina v. Zuniga*, 593 S.W.3d 238 (Tex. 2019).  (*See* Docket Entry 24, at 6–7.)  In *Medina*, the court reversed a jury's verdict in favor of a pedestrian plaintiff on her gross negligence claim and rendered judgment for the defendant driver, explaining that "failure to drive at a safe speed and failure to look both ways before exiting a parking lot, . . . . even taken together, do not amount to gross negligence." 593 S.W.3d at 250.  *Medina* is distinguishable.  The defendant in that case was driving an ordinary vehicle at a speed of no more than 25 miles per hour in a high school parking lot on a non-school day.  *Id.* at 242–43, 248–50. He neither disregarded any posted speed limits nor failed to stop or yield at any posted signs at the parking lot exit.  *Id.*  He hit the plaintiff because he did not initially see her, applying his brakes too late.  *Id.*  Here, by contrast, Ahmed disregarded several posted road signs, driving a tractor-trailer 10 miles over the posted speed limit while rapidly approaching a Border Patrol Checkpoint at which all traffic would be required to come to a complete stop.  (*See* Docket Entry 30, at 14–29.)  Moreover, Ahmed was fully aware that Plaintiff was in the right lane beside him for 12 seconds and that his own left lane of travel would soon terminate, requiring him to merge into Plaintiff's lane of travel.  (*Id.*)  But rather than braking to merge behind Plaintiff, Ahmed

accelerated to try to overtake his vehicle, ultimately pulling into the right lane while fully aware that the result would be a collision with Plaintiff.  (*See id.*)  Given these very different facts, *Medina* cannot be considered controlling.

In sum, viewing the limited summary judgment record before the Court in the light most favorable to Plaintiff, a reasonable jury could find by clear and convincing evidence that Ahmed was grossly negligent when he drove his tractor trailer in Plaintiff's vehicle.

## V.    Conclusion and Recommendation.

Based on the foregoing, I recommend that Defendants' Motion for [Partial] Summary Judgment (Docket Entry 24) be **DENIED IN PART** and **DENIED AS MOOT IN PART**.  With regard to Plaintiff's claim of gross negligence against Defendant Ahmed, I recommend that the motion be **DENIED**.  With regard to Plaintiff's negligent entrustment and gross negligence claims against Step Trucking, I recommend that they be **DISMISSED** pursuant to Federal Rule of Civil Procedure 41(a)(2), and that Defendant's motion be **DENIED AS MOOT** as to those claims.

## VI.    Notice of Right to Object.

The Clerk of the Court shall serve a copy of this Report and Recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user," or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this Report and Recommendation must be filed **within 14 days** after being served with a copy of the same, unless this time period is modified by the District Court.  28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).

The parties shall file any objections with the Clerk of the Court and serve the objections on all other parties.  Absent leave of Court, **objections are limited to 20 pages**.  An objecting party must specifically identify the findings, conclusions, or recommendations to which objections

are being made and the basis for such objections; "objections that are frivolous, conclusory, or general in nature needn't be considered."  *Williams v. Lakeview Loan Serv. LLC*, 694 F. Supp. 3d 874, 881 (S.D. Tex. 2023) (citing *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987)).

A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation shall bar the party from a *de novo* review by the District Court.  *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000).  Additionally, failure to file timely written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to, proposed findings and conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

**SIGNED** on May 1, 2025.

Henry J. Bemporad
United States Magistrate Judge